UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Ft. Pierce Division
Case Number: 07-14335-CIV-MARTINEZ-LYNCH

LINDA WEST and LESLIE D. ALBERTS,
    Plaintiffs,

vs.

CITY OF FORT PIERCE, FLORIDA,
    Defendant.
_____/

## ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant's Dispositive Motion for Summary Judgment (D.E. No. 22) and Plaintiffs' Motion for Partial Summary Judgment as to Defendant's Ninth Affirmative Defense (D.E. No. 21). Plaintiffs Linda West ("Plaintiff" or "West") and Leslie Alberts ("Plaintiff" or "Alberts") are both former employees of Defendant City of Fort Pierce, Florida ("Defendant" or "City"). They have brought suit pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.*, ("FLSA") seeking unpaid overtime compensation. Both Plaintiffs and Defendant have now moved for summary judgment. After careful consideration, the Court denies both motions for summary judgment, finding that genuine issues of material fact remain.

### I.  Relevant Factual and Procedural Background

Plaintiffs West and Alberts are former employees of the Sunrise Theatre, a performing arts playhouse located in Fort Pierce. West began working at the theatre in August of 2005, and Alberts began working for Sunrise Theatre in October of 2005. At the time Plaintiffs began working at the theatre, it was owned by a private corporation; however, in June of 2006, Defendant City purchased it. Both West and Alberts remained employed at the theatre until

September of 2007.

On October 31, 2007, Plaintiffs filed suit against the City seeking recovery of unpaid overtime compensation pursuant to the FLSA. Plaintiffs allege that they never received overtime compensation for work they performed in excess of forty hours during several workweeks.[1] This work occurred when they were employed by the theater, both when it was owned by the private corporation and later when the theatre was owned by the City. Plaintiffs have alleged that the City is a bona fide successor of the private corporation and that it is liable for the payment of Plaintiffs' overtime both before and after the theatre was acquired by the City. Plaintiffs seek both the payment of their overtime compensation and liquidated damages, alleging that the City failed to pay their overtime compensation in bad faith.

Plaintiffs and Defendant now seek summary judgment. Plaintiffs seek partial summary judgment on Defendant's ninth affirmative defense while Defendant seeks summary judgment on all of the claims asserted against it on the basis of this same affirmative defense.

## II. Legal Standard

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). By its very terms, this standard provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be

---

[1] Plaintiffs do state that Alberts received overtime compensation on "at least three occasions;" however, Plaintiffs state that they were generally told not to submit overtime. See (D.E. No. 1 at 3).

no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party.  *Anderson*, 477 U.S. at 248; *Matsushita Electric Indus. Co.,* 475 U.S. at 586.  It is "material" if it might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248.  In addition, in considering a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party.  *Id*. at 255.

If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment.  *See United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 2d 1428, 1438 (11th Cir. 1991).  The moving party  "'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).  "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 3d at 1438 (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.3d 1472, 1477 (11th Cir. 1991)). *See also* Fed. R. Civ. P. 56(e).

In contrast, if the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim or affirmative defense.

*Celotex*, 477 U.S. at 324. When the non-moving party bears the burden of proof, the moving party does not have to "support its motion with affidavits or other similar material *negating* the opponent's claim." *Id*. at 323 (emphasis in original). The moving party may discharge its burden in this situation by showing the Court that "there is an absence of evidence to support the nonmoving party's case." *Id*. at 324.  Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must "go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting Fed. R. Civ. P. 56(e)). A non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### III.  Analysis

"The FLSA was enacted in 1938 in order to eliminate 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Antenor v. D & S Farms*, 88 F. 3d 925, 929 (11th Cir. 1996) (quoting 29 U.S.C. § 202(a) & (b)). As a part of this Act, employers are required to pay employees one and one-half times the regular rate for the hours worked in excess of the standard forty hour work week. 29 U.S.C. § 207(a)(1).  29 U.S.C. § 213 lists a number of exemptions to this requirement; however, these "exemptions 'are to be construed narrowly,' and the employer shoulders the burden of establishing that it is entitled to the exemption." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F. 3d 1150, 1156 (11th Cir. 2008) (quoting *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 965 (11th Cir. 1997)).

Both motions for summary judgment involve Defendant's ninth affirmative defense, which states that "Plaintiffs were exempt from FLSA overtime requirements as employees of a seasonal recreational or amusement establishment under Section 213(a)(3) of the FLSA." (D.E. No. 6 at 5).  Plaintiffs seek partial summary judgment on this exemption and Defendant seeks summary judgment on all of the claims asserted against it on the basis of this exemption.  After careful consideration, the Court finds that genuine issues of material fact remain precluding the entry of summary judgment on this issue.

Section 213(a)(3) exempts:

> any employee employed by an establishment which is an amusement or recreational establishment, organized camp, or religious or non-profit educational conference center, if (A) it does not operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33 1/3 per centum of its average receipts for the other six months of such year, except that the exemption from sections 6 and 7 [29 USCS §§ 206 and 207] provided by this paragraph does not apply with respect to any employee of a private entity engaged in providing services or facilities (other than, in the case of the exemption from section 6 [29 USCS § 206], a private entity engaged in providing services and facilities directly related to skiing) in a national park or a national forest, or on land in the National Wildlife Refuge System, under a contract with the Secretary of the Interior or the Secretary of Agriculture.

Thus, under this provision "an employer qualifies for exemption if it is a recreational and amusement establishment and it also satisfies either the seasonal operation test or the six-month receipts test." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F. 3d 1150, 1156 (11th Cir. 2008).  First, however, in this case the parties dispute the meaning of the word "establishment" with Plaintiffs defining it as including the entire City and Defendant defining it as only including the Sunrise Theatre.

The FLSA does not define "establishment."  However, regulations promulgated by the

Secretary of Labor have defined this term. 29 C.F.R. § 779.23 states that "[a]s used in the . . . [FLSA], the term establishment, which is not specially defined therein, refers to a 'distinct physical place of business' rather than to 'an entire business or enterprise' which may include several separate places of business." *See also A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 496 (1945) (stating that "the word 'establishment' as it is normally used in business and in government . . . [means] a distinct physical place of business."). 29 C.F.R. § 779.303, although specifically applying to exemptions for "retail or service establishments," also states that

> [a]s previously stated in § 779.23, the term establishment as used in the Act means a distinct physical place of business. . . . .The term 'establishment,' however, is not synonymous with the words 'business' or 'enterprise' when those terms are used to describe multiunit operations. In such a multiunit operation some of the establishments may qualify for exemption, others may not. For example, a manufacturer may operate a plant for production of its goods, a separate warehouse for storage and distribution, and several stores from which its products are sold. Each such physically separate place of business is a separate establishment.

In the same section listing regulations applying to exemptions for "retail or service establishments" is a another provision entitled "Separate establishments on the same premises." This section, 29 C.F.R. § 779.305, provides that

> Although, as stated in the preceding section, two or more departments of a business may constitute a single establishment, two or more physically separated portions of a business though located on the same premises, and even under the same roof in some circumstances may constitute more than one establishment for purposes of exemptions.  In order to effect such a result physical separation is a prerequisite.  In addition, the physically separated portions of the business also must be engaged in operations which are functionally separated from each other. . . . In other words, the retail portion of an establishment would be considered a separate establishment from the unrelated portion for the purpose of the exemption if (a) It is physically separated from the other activities; and (b) it is functionally operated as a separate unit having separate records, and separate bookkeeping; and (c) there is no interchange of employees between the units.  The requirement that there be no interchange of employees between the units does not mean that an employee of one unit may not occasionally, when circumstances require it, render some help in the other units or that one employee of one unit may not be transferred to work in the

other unit. The requirement has reference to the indiscriminate use of the employee in both units without regard to the segregated functions of such units.

Plaintiffs argue that the three-part test in section 779.305 should be applied to the facts in this case to determine whether the Sunrise Theatre can be considered separate and apart from the City as an "establishment" under section 213(a)(3). Plaintiffs rely on the recent Eleventh Circuit case, *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F. 3d 1150 (11th Cir. 2008) to support their argument. However, *Alvarez Perez* specifically concerned two potential establishments located on the same premises, the very situation addressed by section 779.305, and it is unclear whether the Eleventh Circuit would apply the three-part test outside of this context. The Court in *Alvarez Perez*, while using broad language in discussing the law and facts of the case, never reaches this issue.

The Court acknowledges that there are two cases from the Fifth Circuit which are controlling precedent,[2] *Mitchell v. T.F. Taylor Fertilizer Works, Inc.*, 233 F. 2d 284 (5th Cir. 1956) and *Mitchell v. Gammill*, 245 F. 2d 207 (5th Cir. 1957), in which the courts apply a functional component in determining whether physically separate entities are one establishment under the FLSA. However, the Court finds these cases distinguishable.

In *Mitchell v. T.F. Taylor Fertilizer Works, Inc.*, the court considered whether a fertilizer dry mixing plant, warehouse, and an office at a separate location were exempted from the FLSA as a retail establishment under section 13(a)(4) of the FLSA, 29 U.S.C. § 213(a)(4) (repealed Pub. L. 101-157, § 3(c)(1), 103 Stat. 939 (Nov. 17, 1989)). 233 F. 2d at 285. Section 13(a)(2) of the

---

[2] In *Bonner v. Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

FLSA, 29 U.S.C. § 213(a)(2) (repealed Pub. L. 101-157 § 3(c)(1), 103 Stat. 939 (Nov. 17, 1989)), provided an exemption for any retail or service establishment as long as more than fifty percent of the establishment's annual dollar volume of sales of goods or services was made in the states in which the establishment was located. Section 213(a)(4) qualified this exemption in section (a)(2) providing that an establishment will not lose its exemption even if it made or processed the goods that it sold at the retail establishment so long as more than eighty-five percent of the establishment's annual dollar volume of sales of goods so made or processed was made within the state where the establishment was located.

In considering whether the fertilizer mixing plant, warehouse, and office were entitled to the exemption under section 213(a)(4), the *Fertilizer Works* Court considered whether the plant, warehouse, and office, located five blocks away, were one establishment. *Id*. at 285-6. The court found that the determination of whether the two entities were one establishment involved both functional and geographical considerations. *Id*. at 286. The Court discussed whether the plant/warehouse and office was a retail business in whole or in part and found that it was functioning as a unit. *Id*. The Court stated that "its salesmen sell on the road or in the office, a product there warehoused, and here processed, in a separate building." *Id*. Thus, the Court found that it did not matter that the plant/warehouse and office were not at the same location and noted that it would be improper to divide a genuine retail business into separate parts. *Id*. Therefore, the Court found the plant/warehouse and office was one single establishment and entitled to the exemption. *Id*. at 287-8.[3]

---

[3] In finding that the Defendant was entitled to the exemption, the court also found that this establishment was in fact a retail establishment. *Mitchell v. T.F. Taylor Fertilizer Works, Inc.*, 233 F. 2d 284, 288 (5th Cir. 1956).

In *Mitchell v. Gammill*, the court considered the same exemptions under sections 213(a)(2) and (a)(4) as applied to a business that consisted of a market for the sale of groceries, meats, poultry, produce and other foodstuffs, a barbecue stand, a restaurant, a liquor store and bar, and a poultry processing department. 245 F. 2d at 208. All of these different entities were located in one building except the barbecue stand, which was located in a smaller building on the same property. *Id*. at 209. The court noted the importance of "a distinct physical place of business" and cited *Fertilizer Works*, noting that it had considered "functional unity." *Id*. at 211. The court also recognized the importance of viewing the matter realistically, stating that "[t]he general store or department store is by its nature varied. The corner store operator is not noted for the precise delineation of his functions or his scrupulous adherence to the accepted categories of business." *Id*. at 210-11. The court then found that this business was one establishment because "with the exception of the barbecue stand, . . . [the business] was all conducted in one building, a distinct physical entity" and "[i]n most respects . . . it was operated as a unit." *Id*. at 211.[4]

---

[4] Plaintiffs have also cited *Shultz v. Hasam Realty Corp*., 316 F. Supp. 1136 (S.D. Fla. 1970) as persuasive authority. However, the Court also finds this case distinguishable. In *Shultz*, the Court considered whether five different facilities: the Diplomat East (hotel), the Diplomat West (motel), the Diplomat Inn, the Diplomat Country Club (a clubhouse and golf course), and the Diplomat Presidential Country Club (a clubhouse and golf course) were entitled to an exemption under a section of the FLSA that previously exempted all employees of an establishment which is a hotel, motel, or restaurant. *See* 29 U.S.C. § 213(b)(8) (repealed P.L. 95-151 § 14, 91 Stat. 1245, 1252 (Jan. 1, 1979)). The Court considered whether the Diplomat complex constitutes a single hotel establishment, entitling it to exemption.

The Court applied the criteria set forth in an interpretive bulletin issued by the Secretary of Labor which referenced prior versions of 29 C.F.R. § 779.302 and 29 C.F.R. § 779.305. 316 F. Supp. at 1142. The Court found that four of the five facilities were located on physically contiguous parcels of land. *Id*. at 1143. It noted that the Presidential Country Club and Golf Course was located five miles from the other buildings "only because the price of land at the time of its construction made it economically unfeasible for the Diplomat to provide its guests with additional golf facilities close to the main hotel units." *Id*. The court also found that "[n]o separate books and records are kept for the various facilities. The general accounting

These cases are distinguishable from the case at bar. The "functional" test applied in these two Fifth Circuit cases is different from the very specific test outlined in section 779.305 of the regulations. The test in these cases is concerned with the reality of the situation and whether it was logical to treat the different parts of these businesses as separate establishments. In both of these Fifth Circuit cases the different entities were clearly parts of an inseparable whole. In addition, in both cases the Court was concerned with a different exemption than the one at issue in this case.

In this case, the Court considers a theatre that is owned by the City of Fort Pierce. Although the City certainly provides certain functions to the theatre as part of its ownership and control, the theatre is a distinct entity and it is undisputed that the theatre has a distinct physical location.[5] Thus, the Court finds pursuant to section 29 C.F.R. §§ 779.23 and 779.303 that the theatre is the "establishment" in this case and it is the distinct physical place of business and the City is entire business or enterprise. *See McLaughlin v. Lunde Truck Sales, Inc*. 714 F. Supp. 920,

---

department maintains payroll, financial, and accounting records for all Diplomat properties. Nor are employees hired to work solely in one of the five units. Hiring is done through a central office, and employees are interchanged between the various facilities as needed." *Id*. Based on this evidence, the court found that the five facilities were a functional, cohesive unit and that "each is part and parcel of the whole." *Id*. Thus, the Court found that all five facilities were a single hotel establishment within the meaning of former section 213(b)(8).
    This Court finds *Schulz* distinguishable as it involves a completely different exemption that no longer exists, and it involves the application of a bulletin from the Department of Labor that references prior versions of the regulations now in effect. In addition, the case at bar involves a completely different situation. The Court is not considering five related hotel facilities but rather this is a case where a City owns a small theatre. The theatre and the City are not part and parcel of a whole anything.


[5]The Court finds Plaintiffs' arguments that the location is not distinct because it is located within the City of Fort Pierce along with a number of other City buildings to be completely without merit.

-10-

926 (N.D. Ill. 1989) (finding that as the corporate defendants did not share the same premises it was not appropriate to apply the tests relating to "separate establishments on the same premises" and finding the corporate defendants, operating at two distinct physical locations, were separate establishments under section 779.23.); Dep't of Labor, Wage and Hour Op. Letter (February 18, 1999), *available at* 1999 WL 1002367 (offering an opinion that a city's golf course could qualify as a separate establishment).[6]

As the Court finds that the theatre is, as a matter of law, the establishment, Defendant must next demonstrate that the theatre is an amusement or recreational establishment and that it either meets the seasonal operation test or the six months receipt test. There is no dispute that the theatre is an amusement or recreational establishment. Defendant has sought summary judgment under section 213(a)(3) by primarily arguing that the theatre meets the six months receipt test. After careful consideration, the Court finds that genuine issues of material fact remain as to whether the theatre meets this test.

Section 213(a)(3) provides that an establishment meets the six months receipts test where "during the preceding calendar year, its average receipts for any six months of such year were not more than 33 1/3 per centum of its average receipts for the other six months of such year." Defendant argues that the theatre meets the six months receipts test for 2007 because in the average 2006 calendar year, the year preceding the relevant time period, ticket sales for the theatre for any six months of 2006 were not more than 33 1/3 per centum of its average receipts for the

---

[6] Although neither party raises this issue, the theatre was not even owned by the City but was owned by a private corporation for part of the time for which Plaintiffs are seeking compensation. Thus, during this time period, the only possible establishment was the theatre.

other six months of 2006.[7]  For the portion of 2005 and 2006 for which Plaintiffs are seeking compensation, Defendant argues that the Court should estimate the receipts based on the figures known for 2006 because the theatre was not in operation for a number of years prior to the grand opening of the theatre in January 2006.  Defendant argues that for 2005 and 2004 the theatre should be treated as a new business, and under the Field Operations Handbook for the Wage & Hour Division when considering a new business, one must look at other similar seasonal amusement or recreational establishments in the area.  Defendant argues that it could "only be more accurate to look to how the exact same establishment actually performed" in a later year.  In the alternative, Defendant makes the conclusory argument that the theatre "could not have operated more than seven months in 2004 or 2005 if its Grand Opening did not take place until 2006."  (D.E. No. 22-2 at 13).

The Court finds there are genuine issues of mater fact as to whether the theatre meets this six months receipts test.  First, Defendant has based its figures of the "average receipts" on a calculation only of ticket sales.  However, the Court agrees with Plaintiffs that the plain language of the term "receipts" is not limited to ticket sales.  "Receipts" is defined in relevant part as "something received; income."  BLACK'S LAW DICTIONARY 1274 (7th ed. 1999).  *See Bridewell v. Cincinnati Reds*, 155 F.3d 828, 830 (6th Cir. 1998) (affirming a district court holding that "the plain language of the FLSA makes it clear that 'receipts' refers to money which is actually received at the time it is actually received."); *Jeffrey v. Sarasota White Sox, Inc.*, 64 F. 3d 590, 595 (11th Cir. 1995) (discussing the six months receipts test under section 231(a)(3) and stating

---

[7]Defendant argues that this is true under either the accrual or receipts method of accounting.

that "Defendant's receipts are generated from ticket sales, concession and parking revenues, promotional sponsorships, publication sales, advertising and other miscellaneous items."). Plaintiffs have presented evidence that during the time period in question it also received income from donations, pledges, memberships, rental fees, event service fees, beverage sales, souvenir sales, and sponsorship fees. (D.E. No. 27, Exh. A at 4). Such income is included in the word "receipts." As this income was not counted in the calculations performed by Defendant, the Court finds that the existence of these other sources of income create a genuine issue of material fact as to its arguments relating to all of the years at issue.

In addition, Defendant has based part of its argument on its belief that the theatre was not "open" until January 1, 2006. However, Plaintiffs have presented evidence that the prior company that owned the theatre existed as early as 1999. (D.E. No. 27, Exh. C). Moreover, no one has disputed that Plaintiffs were employed by the theatre in 2005, which indicates that the theatre was in operation before 2006. Thus, the Court finds these are additional genuine issues of material fact which prevent the entry of summary judgment on this issue. Accordingly, it is hereby:

**ORDERED AND ADJUDGED** that

1. Defendant's Dispositive Motion for Summary Judgment (D.E. No. 22) is **DENIED**.

2. Plaintiffs' Motion for Partial Summary Judgment as to Defendant's Ninth Affirmative Defense (D.E. No. 21) is **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida, this 8 day of August, 2008.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Lynch
All Counsel of Record